I'd like to reserve five minutes of my 20 for rebuttal. I'm going to start off with the motion to suppress the confession. I think the main issue there is whether the defendant waived his right to a Miranda warning at the time he was initially stopped by the police. The record's clear both officers testified that he was given his Miranda rights and he said he understood them. The record's clear that they never got any express waiver from him. Does it always have to be express? No, under North Carolina v. Butler, the standard is basically a waiver can clearly be inferred from actions and words of the person interrogated. And the emphasis has to be clearly inferred. And where the defendant then goes on and gives them kind of his name or the fact where his partner is and the ownership of the truck, but then basically remains silent as to any type of incriminating statement concerning the robbery, which both officers who were present at that questioning both testified to. Those, it cannot be inferred that he basically waived his rights at that point. And then after that time, he basically, his testimony never gave any statement. But I think because he never, they never got a waiver at that time. And you have to remember the information then went through police channels that he was cooperating with them. So when the officer or the detective shows up at the jail, he's under, he's under the misinformation that this guy had waived his rights, when in fact he never waived his rights. And because he never waived his rights, the detective and the information was incorrectly stated to him that he had waived his rights, he should have given him Miranda at the jail. What was the extent or the nature of the questions that he in fact answered? Basically, my understanding is before he was Mirandized, they wanted to know where's your partner, because it's kind of a public exception. They wanted it because they didn't know that his partner had already been apprehended. The second thing was I think they, he gave them his name, and then the third question was whose ownership of the car was it, because they had suspicion that the car might have been stolen. He said, no, it's my dad's. Other than that, both officers testify he didn't say anything. I think the phrase I used, Bennett testified that Jones was reluctant to reply to anything that would be an incriminating statement, but would reply to stuff that was not important to the actual robbery itself. So the record's clear there, and that's why I think there's clear error that the district judge not suppressed the confession. Now, the other issue that ---- Do you think any of those statements might have been incriminatory in any way? Probably the one as to where's your partner. If you respond to that, you've kind of, I guess, admitted you have a partner. But that was done, and I think the magistrate was right, is that because they didn't know where the guy was and there may have been a threat, that probably comes within the public safety exception to the random warning. But then that was the only question he answered prior to being Mirandized. Now, the ownership of the car, you know, I don't think that would be inculpatory. His name I don't believe would be inculpatory at that point. So basically he gave them no information. That was inculpatory at that time. And at that, therefore, he should have been re-Mirandized. Another point is, is that, you know, the Metropolitan Police has forms, you know, where they can check all the rights, check if the person understands them, and check and get a waiver. You've seen them in the other cases, though. Right. And so there's no reason why the detective couldn't have gotten that at the jail and should get it at the jail. I mean, I think there's a national outcry based upon the Illinois getting rid of their death penalty cases based upon bad confessions that stricter standards should be, or this Court should impose a stricter standard. So I don't think the statement is burdened that the defendant clearly waived his right to the Miranda. The next issue, which I think is important, goes to the Warpus statement. Now, that basically, and I think the other point the other attorney made, this is a problem when you have State cases drained into the Federal system, when you make the Federal District Court into the State Police Court, is that invariably not everything gets from the State file to the Federal file. And in this case, we have a clear statement from Mr. Warpus basically saying I didn't get a good facial of him. Now, that's at the beginning of the case. Instead of the end of the case, I think you can see where that type of statement, you know, it's not clear that he would even be a witness for an eyewitness identification by the prosecution at that point. But they knew that he had a statement out there saying I didn't get a good facial of him. Yet, even though he has that statement, he's dragged out facial, facial of look at the guy. Oh, facial. Oh, okay. Yeah. And so, you know, in a sense. A lot of times with facial, they go to these places. But anyway, and so therefore, the question comes up, would he have even been a witness at that point, an identification witness? You know, I filed motions to suppress an eyewitness identification prior to the trial. You know, I didn't have that information in my hand to attach to the motion. The judge didn't have that information when he makes the determination as to the reliability of the eyewitness testimony. At trial, as I recall from reading all this, at trial, the judge seemed to recognize the problem and gave defense counsel some additional time or the option for additional time. Well, he did that, Your Honor. He called the witness back. And we did. We called Mr. Warpus back. I believe I called him. He gave us the option. But I called him back. I noted both the various, I think there were four or five contradictory statements in his initial statement as to what he testified at trial. But I just don't think that by the end of the trial that you can really unring the bell. I mean, this I think was, I think we're two and a half days into the trial at that point, and he was the government's second witness. And, you know, that type of impact, you know, late testimony, coming back and saying, well, I didn't now have a better time to reflect and say what happened. And, you know, and that's what kind of explains the way the statement. It would have been better if I had had that statement when he first got up. Well, he says at the time, well, didn't you just tell the officer that you didn't get a good view of him? The other point was that he handed the he testified that he handed the money to the guy, and that's when he got the second view of him, when, in fact, his statement said that he gave the money to Melissa Hall and she gave it to him. So that contradicted really most of his trial testimony, is when he would have an opportunity to see my client. Now, he was actually being robbed by the other defendant, and so therefore would have a much better look at that person. Even if, you know, even if the infield I.D. was tainted, and even if you go on to say that his I.D. was unreliable under the Biggers factors, why is this just all harmless? There was a lot of evidence there about Mr. Jones and his involvement in this robbery. I mean, why is this just harmless? Well, I think that if you get rid of his confession and then you get rid of his I.D. What about the I.D.? Well, if you get rid of the I.D. and keep the confession, you're probably right. You know, it might be harmless at that point. There is some fingerprint evidence, although I think that was shaky. I don't think the jury relied on that because the person who put together the presentation or testified as to the fingerprint evidence basically said there were 14 points in comparison that were similar, but then he only put six up there. And he never could explain why and never did explain what the other eight points were. So I don't think the fingerprint evidence in that situation was as strong. Did you show the videotape? Did you get the – was that recovered? The videotape was recovered, but there was no – there was a stipulation between the prosecutor and I. They looked at it, and there was nothing on the tape visually. So there was no evidence of these two individuals perpetrating the robbery. Basically, the videotape only came in the evidence to tie the defendant to the store and also to get the fingerprint. The other issue I think which is important would be the eyewitness testimony and the fact that they – when you look at the situation, they basically took two terrified people from the store and did a show-up of two individuals, when in fact they had already in the robbery. There was no reason, investigative reason, to drag these two terrified people, one of whom admitted he didn't get a good facial view, and take them out there, put them in one car, let them confer, and then agree essentially that my guys – the best procedure, the better procedure would have been, since they already had enough probable cause evidence, would be to allow these people to settle down and then take them down for a line-up or a photo line-up, that type of situation. And therefore, I think the show-up was clearly suggestive. The last issue I'd like to address is the Commerce Clause. I requested an instruction basically to go to a substantial impact instruction. I would agree with prior counsel that this was basically a state case, and I don't know of very – I don't know of any other cases where basically a local robbery of a local store is handled in federal court. And there was a – at the time, the ATF was meeting with Metropolitan Police and the district attorney, and they were kind of deciding which cases should go federal. And I would argue that that's exactly what Justice Thomas and some of the other judges are talking about in the Supreme Court cases when they're worried about basically the federal government basically usurping the state's power to prosecute local crimes and becoming basically a federal police power. And therefore, I would argue that the Tenth Amendment that reserves the rights of the states has to be balanced somewhat against the – I thought they were working these deals out among themselves. They – from what my understanding was is that they meet at a kind of a joint task force, essentially. How is that a usurpation of power? Well, because it basically – they're drawing what would normally be a state crime. But if the state says, yeah, go ahead and do it. Well, then you have the counter concern is that the federal government under the commerce or under the Constitution should not be basically a police court, that there should be some balance. And we've seen that in the Lynch case where, against crimes against individuals, the court kind of structured a new standard there to handle that situation, to balance the Tenth Amendment against the Commerce Clause. And what I would argue that in a case like this, which is – you know, it's really a local case. These people aren't gang members. They're not part of a carjacking ring or anything else. They're not part of a drug ring, which obviously has national significance. It's basically a local robbery by two young adult black males. And that's basically 98 percent of the time probably a state case. And in that situation, I'd argue that the court should fasten a standard that requires a substantial impact to interstate commerce in order to properly balance the Tenth Amendment against the Commerce Clause. I'll go ahead and reserve the rest of my time. Okay. Thank you. Good morning again. Russell Marsh for the government. I want to deal first with the Commerce Clause issue and then go back and deal with the other three issues because that's what the defense counsel was talking about last. He brings up the Lynch case. Obviously, the Lynch case involved an individual who was robbed. I believe in that case it was somebody who was taken from Nevada to Montana and chopped up, put in a hole or something like that. It was an individual. The Atchison case became – was specifically discussed in Lynch and differentiated involving businesses, like what we're talking about here, Hollywood Video, some business that's doing – is actively in interstate commerce. So that case is easily distinguished. That was recognized in Lynch itself. And for whatever reason, defense counsel never cited or talked about the Atchison case, although I believe it is controlling and shows that this Court has already decided the issue. With that, I think we can move to the other three. And I think there is an overarching thing which Judge Paya has mentioned, which is all three of these cases, or all three of the other arguments, are met with the overwhelming proof of this case. You have a case where two men go into a video store, one with a sawed-off rifle, this defendant with a handgun. He goes into the office, has Ms. Hall take the video out of the – wherever it was, so that they wouldn't be able to have him on video. They get into a car. They're seen getting into a late model silver or gray Cadillac. Moments later, a veteran police officer sees them going the other way, recognizes the description, and turns around and forces them to crash into a guardrail. So we've basically got these folks who are identified at the scene getting into this car, driving down the street. They crash into a guardrail. And one of the defendants, I believe it was Smith, is still in the car in the passenger seat with all the money, the Hollywood video bags, the two guns, exactly the same guns, a cap or a do-rag that the other defendant, Mr. Jones, had on his head, all in the car. Jones, who's the driver, is seen by police getting out of the car, running away. He's under constant visual surveillance until he's arrested. And in his path is found this broken videotape that has his fingerprints on it. So I would submit that even without the statement, which we didn't have in the Smith case where the defendant was also convicted, without the statement, without the evidence, if these two defendants had been wearing masks and had not made statements at all, that there would still be overwhelming proof and that any error would be harmless. Now, to deal with the specific issues, first off, we have to talk about the Miranda issue, whether or not there was a waiver of Miranda's warrant, whether or not there was a waiver of the warrant. And basically, at the hearing when that issue was decided, it was a factual dispute. Mr. Jones had a totally different version of events than what the officer did. Mr. Jones says, I'm Mirandized, I'm totally cooperative, I'm answering all their questions. Then this mystery officer comes up in a white car, reads me Miranda again, and I invoke. And then they take me back to the station, and I don't make any statement at all. Now, the officer says, agreeing with the defendant, yeah, I Mirandized him, but he wasn't totally cooperative. He didn't answer everything right away the way that I might have liked. Of course, this guy had just been in a high-speed chase. He'd been chased down by police. About two minutes after this happened, I believe he's throwing up, you know, on the And so they decide that, you know, probably the best place to do that is going to be back at the station. They take him to the police station. The detective there has informed this guy, was read his rights, he understood his rights, he's started to talk to us, and he's totally cooperative. That's the police version of events. The defendant says, I didn't even make a statement at the police station at all. Now, the judge who looked at it says, well, that's ridiculous, because if the police were going to make up a statement, why would they have all these exculpatory things in there, like I didn't know the gun was loaded, or why would you make up a statement at all when the proof is so overwhelming? In fact, Smith didn't make a statement, and, you know, the police didn't make up one about him. So I think the judge makes a pretty good point that the defendant's totally unbelievable on that issue. Now, I believe one of the judges, one of you, I believe it was Judge Paez, talked about what exactly was the conversation that took place between the nature of it. Well, I mean, I think he's right. The nature is he asks him whose car is that, and he says it's my uncle's or some sort of relative. I'd say that's an incriminating statement. It ties him to the car that was just involved in the robbery. And then say, can you describe the manner of the questions you were asking him and the responses you were getting? The answer, well, I asked him some questions, like I stated, in regards to the robbery itself as well as who the vehicle belongs to, where they got the vehicle. It's my assumption the vehicle was stolen. So I asked him in regards to whose vehicle it was, and I believe he advised me it was his father's vehicle, possibly his uncle's. It was some type of close relative. I also asked him, like I said, direct questions in regard to the robbery. If they had done it, you know, if he knew what a serious crime this was and stuff like that. And as I stated before, he was pretty winded, and he was kind of just shaking his head and answering yes, you know, I don't know, stuff of that nature. Now, the police officer characterizes that as being unresponsive because he's not necessarily getting the answers that he wants. But was there any sort of invocation there? Was there any indication, you know, I don't want to talk to you, I want a lawyer, anything like that? No. There's an ongoing conversation. And in that way, I think it can be seen as consistent with the defendant's own admission when he testified that I answered whatever the questions were the police asked at the scene or that that particular officer made at the scene. So I think that the judge's findings in that respect that there was a voluntary waiver of the Miranda rights is supported by the record. And, again, if there's any problem with it, even if we look at this case without that statement at all, the proof is overwhelming and any error was harmless. Let me move on to the, unless you have any questions on the Miranda issue, the show-up and the late disclosure of the witness statements, particularly Mr. Warbness. And I would note Ms. Hall, who also testified, who's a much more important witness with respect to this defendant, there was no problems with the tapes that they got, tape statement regarding her. She testified totally consistent with them. Warbness, there were problems. And I do agree with the defendant on one thing. I think that if the prosecutor had known about that tape before trial, he would have never called Warbness as a witness. He's a totally unnecessary witness. He's icing on the cake. You know, it's almost piling on, cumulative evidence. He didn't get a good look at, or he's not the one who was dealing with this particular defendant, he has the other defendant smashed, sticking a sawed-off rifle in his face. So although he gives inconsistent statements, he has a perfectly good explanation for it when he does testify at trial, which was, I didn't want to be there. I just wanted to get the statement over with and go home. And that's borne out by the fact that the next day, both of them had to leave work early because they were both so choked up, which was another impact on interstate commerce. So, you know, what the district judge found in that respect was actually, and I think this is true, that if there were any prejudice from the nondisclosure, it fell on the government because the government has one of its witnesses trashed. And it allows the defendant to try to, in a case where there's overwhelming proof, to try to put some blame on the government and say that they haven't totally done their job as they should. I mean, there's a great line in the defendant's brief where he says, they denied me the ability at the time to show that the entire investigation was questionable. Well, if you've got a guilty client, that's, of course, that's what you want to do is point the finger at the police. And here, they could have done things better. The show-up was not the best thing that could have happened, but I think it was reasonable under the circumstances. The district court looked at all the factors under Neal v. Biggers, noted that these witnesses, that Hall in particular, got a good look at the defendants, that Hall saw the car driving away, that Hall saw the do-rag or the cap on the defendant was found in the car, that this show-up happened right away, right after the incident. And really, when you combine it with the fact of seeing the car leave the parking lot and basically being almost under surveillance the entire time, you know, there's really a question of what the identification even adds to the whole case or what you might have expected the police to do under the circumstances, whether you wanted to hold these two witnesses any longer who were already shaken up or whether you wanted to just deal with it right there. Finally, I would add that with respect to that late disclosure, that the test there is whether or not there's any culpability on the government and whether there's any prejudice to the defendant. I think it was shown that this was, again, an inadvertent thing that happened. Obviously, the prosecutor would have wished he'd known about these statements ahead of time. And the second issue is whether there's any prejudice to the defendant. Here, that prejudice was cured when the district court allowed the defendant to recall Mr. Wartness, and as he indicated, if there was any prejudice, it ended up being on the government. Thank you. Go to rebuttal. Just one quick item. The prosecutor stated that the defendant at the suppression hearing testified that he was not reluctant to answer any questions by the police officer that initially detained him. He did testify that on direct on that. However, in response to cross-examination by the prosecutor who gave a little bit more of a detailed or questioning as to exactly what was said and wasn't said, he admitted he then testified that he did not answer all their questions, so that there is an inconsistency in his testimony at the suppression hearing. But I did want to bring that out, and that's why I asked the Court, if the Court's going to reject totally the testimony of the defendant, or the magistrate did that, and adopt the police officer's testimony, then you should adopt it as an initial stop, and they clearly did not get a waiver at that point. So unless the Court has any more questions, I'll go ahead and submit on that. Fine. Thank you. And the matter will stand submitted, and we're going to take a short break. I think the remainder of the case is, I think probably all we need are 10-minute arguments on those.
judges: Pregerson, Beam, Paez